## In re SYLEECAU MFG. CO.

(District Court, W. D. South Carolina. September 29, 1922.)

1. Mortgages ⟐⟐42—No particular form is necessary if paper shows conveyance to secure debt.

It is a general rule, in the absence of express statutory provision otherwise, that no particular form is necessary to give validity to a real estate mortgage; but it is essential that the paper should show on its face the conveyance of property to secure a debt.

2. Mortgages ⟐⟐42—Mortgage held not invalidated because it contained provisions appropriate to chattel mortgage.

The validity of a mortgage of standing timber as a real estate mortgage is not affected by the mere fact that it contains provisions appropriate to a chattel mortgage as well.

3. Mortgages ⟐⟐108—In absence of statute, valid mortgage takes effect from date of execution.

In the absence of statutory requirement, a valid mortgage or deed takes effect from the date of its execution, and if subsequent creditors or purchasers without notice acquire an interest in the property as against the grantee

or mortgagee, it must be by legislative enactment.

4. Liens ⟐⟐12—Lien on debtor's property ranks claim of simple contract creditor, in absence of statute.

A lien on property of a debtor takes rank over the claim of a simple contract creditor, unless otherwise provided by statute.

5. Mortgages ⟐⟐171(1)—Under South Carolina statute, mortgage recorded out of time held to take effect from that date as respects priorities (22 St. at Large S. C. p. 746, amended by 28 St. at Large, p. 482).

The registry statute of South Carolina (22 St. at Large, p. 746) was amended by 28 St. at Large, p. 482, by adding a proviso that the recording of deeds and instruments after the time prescribed by the statute "shall, from the date of such record, have the same effect as to the rights of all creditors and purchasers without notice as if the said deeds or instruments of writing had been executed and delivered on the date of the record thereof." Held, that the effect of the proviso was to give to a mortgage so recorded out of time priority over all claims not having the effect of a lien at the time of the record.

6. Judgment ⟐⟐800(1)—Judgment vacated ceases to be lien, so long as the judgment of vacation is unreversed.

A judgment of a state court, which has been set aside by another state court of competent jurisdiction in a direct proceeding therefor, ceases to be a lien so long as the judgment of vacation is unreversed.

7. Corporations ⟐⟐420—Judgment against a corporation by confession, signed by its president without authority, held void.

A judgment by confession against a domestic corporation of South Carolina, having its place of business in the state, entered in another county and signed by its president, whose act was neither authorized nor ratified by the directors, held void.

In Bankruptcy. In the Matter of the Syleecau Manufacturing Company, bankrupt. On review of decision of referee. Modified and affirmed.

Arrowsmith & Muldrow, of Florence, S. C., for Farmers' & Mechanics' Bank.

Dunlap & Dunlap, of Rock Hill, S. C., for Manchester Co.

J. Harry Foster, of Lancaster, S. C., for trustees and petitioning creditors.

Spencer, Spencer & White, of Rock Hill, S. C., for various creditors.

WATKINS, District Judge. This matter comes before me upon petitions to review the reports of John A. Marion, Esq., referee in bankruptcy, and his order disallowing the preferences claimed by way of lien of the Manchester Company of Rock Hill, S. C., and the Farmers' & Mechanics' Bank of

Florence, S. C.; the former claiming preference through its mortgage, and the latter through a confession of judgment in its favor. Both of these claims of preference were disallowed by the referee. The facts are fully set out in the referee's report, and need not be rehearsed in detail in this opinion. The findings of fact are fully sustained by the evidence, and will be approved and confirmed. A brief summary of the facts will be necessary, for the purpose of making clear the conclusions arrived at in this opinion.

The Syleecau Manufacturing Company is a South Carolina corporation, with its residence and principal office at Rock Hill, in the county of York, South Carolina. At the time of its adjudication to be a bankrupt, and at the time of the transactions hereinafter referred to, it was the owner of certain timber rights in and upon lands situated in the county of Florence, South Carolina, these rights being obtained and evidenced by appropriate real estate deeds duly entered of record in that county. On the 15th day of July, 1920, for money borrowed, it executed to the Manchester Company a certain mortgage in the sum of $25,000, whereby it did "bargain, sell and convey unto the said Manchester Company, its successors or assigns, all of the standing timber of every kind and description, which is more particularly described in the deed of E. R. Buchan to the Syleecau Manufacturing Company, and the previous deeds of E. E. Chandley and the Massey-Morrison Lumber Company, Inc., recorded in Deed Book 29, page 516, office of the clerk of the court for Florence county, and to various deeds therein referred to, for a more particular and complete description of the timber rights and easements hereunder conveyed." The habendum of the mortgage was "unto the said the Manchester Company, its successors and assigns." There was reserved to the Syleecau Company the privilege of sawing and cutting the timber upon the condition of its applying to the said mortgage indebtedness a certain sum from the amount of the timber cut or sawed. But for the words of inheritance used in the mortgage, it was drawn in the form customarily used in the preparation of chattel mortgages, with provisions for seizure, sale, etc., in case of default.

This mortgage was first recorded in the chattel mortgage records of Florence county on July 19, 1920, and was not recorded in the real estate records for that county until the 29th day of August, 1921. The evidence strongly indicates that, during that time, the paper was treated by the Manchester Company, through its attorneys, as a chattel mortgage, as indicated by certain of its provisions, which were appropriate only to such an instrument, by the long neglect to record elsewhere than in the chattel mortgage book, and by certain proceedings taken in attempt to foreclose. There is no evidence, however, showing or tending to show that the mortgagor intended that the instrument should have any limited effect, other than its terms indicated. There is no suggestion anywhere in this proceeding that it should be reformed, in order to conform to any actual intention of the parties. It must be measured, therefore, by what its terms legally and naturally import.

[1] The rights covered related to standing timber, which, until severed from the freehold, could not be conveyed by chattel mortgage. If given effect at all, the instrument must be determined to be a real estate mortgage. It is a general rule, in the absence of express statutory provisions otherwise, that no particular form is necessary to give validity to real estate mortgages. It is essential that the paper should show on its face the conveyance of property to secure a debt. Mills v. Lumber Co., 109 S. C. 280, 95 S. E. 355; Lorick & Lorance v. McCreery, 20 S. C. 424; Salley v. Gunter, 13 Rich. (S. C.) 72; Harlowe v. Hudgins, 84 Tex. 107, 19 S. W. 364, 31 Am. St. Rep. 21; Cross v. Weare Commission Co., 153 Ill. 499, 38 N. E. 1038, 46 Am. St. Rep. 902; 27 Cyc. 1078. The rule stated in the last authority is as follows:

"It is immaterial that a conveyance clearly intending to convey the interests of the grantor in certain described real estate is written upon a form intended for chattel mortgages, or that it is acknowledged in the character of a chattel mortgage."

[2] It will be observed that in this case the words of inheritance are repeatedly used, words which would be unnecessary in the case of a mere chattel mortgage. That it was the intention that the mortgage should contain whatever requisites were demanded is further shown by a reference to the notes, which the mortgage secures, each of which states that it is "secured by a mortgage of even date hereof to the Manchester Company, wherein is conveyed certain standing timber in Florence county, South Carolina." The agreement of the stockholders, whereby the mortgage is authorized, empowers and directs the president and secretary of the com-

pany to execute and deliver "a mortgage of all timber rights that the Syleecau Manufacturing Company has in Florence county, South Carolina." This agreement was signed by all the stockholders, and the loan made and the mortgage executed pursuant thereto. It should be added that there is no reason for denying validity to a real estate mortgage because of the mere fact that it contains provisions appropriate to a chattel mortgage as well. Indeed, it frequently happens that conveyances of timber rights cover, not only standing timber, but that which has been severed from the freehold also.

The most serious and difficult question in the case has been brought about by the failure to record the mortgage as a real estate mortgage within the 10 days prescribed by statute. There can be no doubt that between the date of its execution on July 15, 1920, and its record on August 29, 1921, the mortgage created no lien as against subsequent creditors or purchasers for value without notice. The entry upon the chattel mortgage records was wholly ineffective to give such notice. As will be seen, however, later on in this opinion, the only other lien creditor or claimant of lien is the Farmers' & Mechanics' Bank of Florence, S. C., and this creditor had actual notice. The referee's report shows that there are certain simple contract creditors who had no notice of the mortgage, and whose claims arose after its execution and prior to its being properly recorded. It remains, therefore, to consider what effect the record of the mortgage out of time had upon these creditors. If, as to them, such record failed to create a lien preference, the trustee would be entitled to the property free from lien for general distribution, save only as to the Farmers' & Mechanics' Bank, as to which no record was necessary, because of its actual notice.

[3] In determining the effect of the registry laws of South Carolina, this court is bound by the decisions of the Supreme Court of this state. The case is governed by the Registration Act of 1898 (22 St. at L. p. 746), as amended in 1909 (26 St. at L. p. 189), and further amended in 1914 (28 St. at L. p. 482). It is to be regretted that, so far as I have been able to discover, the effect of the amendment of 1914 has not been the subject of a decision by our state Supreme Court.[1] It has, however, been passed upon in a most

able opinion by Hon. Henry G. Connor, United States District Judge for the Eastern District of North Carolina, in the case of In re F. H. Saunders & Co. (C. C. A.) 272 F. 1003. This opinion contains an elaborate review of the registry laws of this state and of the decisions of our Supreme Court thereon. It would be needless reiteration for me to undertake an elaborate review of the authorities in this opinion. We may begin with the fundamental proposition that, in the absence of statutory requirements, a valid mortgage or deed takes effect from the date of its execution and delivery. If subsequent creditors or purchasers for value without notice acquire an interest in the property as against the grantee or mortgagee, it must be by legislative enactment.

[4] Another fundamental proposition is that a lien upon the property of a debtor takes rank over the claim of a simple contract creditor, unless the statute otherwise provides. The statute of 1843 (11 St. at L. p. 256) required real estate and chattel mortgages to be recorded within 60 days from their execution, in order to be valid as against the rights of subsequent creditors or purchasers for value without notice. How strictly this statute was limited to the specific instruments therein referred to may be seen from the cases of Steele v. Mansell, 6 Rich. (S. C.) 437, 452; McKnight v. Gordon, 13 Rich. Eq. (S. C.) 222, 94 Am. Dec. 164; Williams v. Beard, 1 S. C. 309; Piester v. Piester, 22 S. C. 139, 53 Am. Rep. 711. The evil of secret liens and conveyances became so great that in 1876 an act was passed (16 St. at L. p. 92) greatly extending the protection of the law. This statute specifically stated that all deeds of conveyance, deeds of trust, mortgages, marriage settlements, leases for a longer period than twelve months, statutory liens on crops, buildings, ships, etc., in order to be valid from the time of their delivery as against the rights of subsequent creditors or purchasers for valuable consideration without notice, must be recorded within 40 days. It was held, however, in King v. Fraser, 23 S. C. 543, that a mortgage recorded after the time allowed by the act acquired a lien from the date of its record, and from such date had priority over simple contract creditors whose debts arose subsequent to the execution and prior to the date of the record of the mortgage. See, also, Carraway v. Carraway, 27 S. C. 576, 5 S. E. 157.

The effect of this decision was to exclude from the benefits of the act the claims of

---

[1] Subsequent to the filing of this opinion the Supreme Court of South Carolina has construed the provisions of this statute in harmony with the views expressed above. Carroll et al. v. Cash Mills et al., 125 S. C. 332, 118 S. E. 290.

simple contract creditors for valuable consideration without notice, by enabling the holder of the secret lien or conveyance to place the same upon·record at any time before other liens attached. In order further to remedy the evil, the act was so amended in 1898 (22 St. at L. p. 746) as to put all subsequent simple contract creditors in the same position as if they had procured intervening liens. This statute was construed by Justice Woods in the case of Brown v. Sartor, 87 S. C. 116, 69 S. E. 88. That it should not be construed entirely to destroy the lien of an unrecorded mortgage, but only to limit its effect upon the claims of subsequent creditors and purchasers for value without notice, is shown by the following language:

"But for all other purposes, after the mortgage has been recorded, though after the statutory limit, it is to be regarded as if a mortgage had been made as of the day of record, having a lien from the date of the recording, which cannot be displaced by any lien subsequently acquired by record or otherwise. This is the principle laid down in Steele v. Mansell, 6 Rich. 442; King v. Fraser, 23 S. C. 543, and Carraway v. Carraway, 27 S. C. 576, 5 S. E. 157. * * * The rule which the statute was intended to establish, and, we think, its plain meaning, is that mortgages not recorded within the time fixed are invalid as to subsequent creditors whose debts were contracted before actual record, but that after actual record no superior lien can be acquired by judgment or otherwise."

[5] I have been unable to obtain a journal of the proceedings of the Legislature of 1914. It would be interesting, and doubtless throw some light upon the purpose of that body in adding to the act of 1898 the proviso which reads as follows:

"Provided, nevertheless, that the recording and record of the above mentioned deeds and instruments in writing subsequent to the expiration of said ten days shall, from the date of such record, have the same effect as to the rights of all creditors and purchasers without notice as if the said deeds or instruments in writing had been executed and delivered on the date of the record thereof."

It is a fact that a great many of our citizens without the slightest intention of fraud or wrong, are notoriously careless in the matter of recording deeds and mortgages. The proviso would indicate the purpose of allowing such person to place these instruments on record, and give them effect and priority from the date of their record. There is no limitation in the effectiveness of such instruments from the date of their record. They are to "have the same effect as to the rights of all purchasers and creditors without notice as if the said deeds and instruments in writing had been executed and delivered on the date of the record thereof." The plain import of these words is to give to a mortgage priority over all claims not having the effect of a lien at the time of the record. Any other construction would make of the amendment a nullity. It will doubtless be contended that such construction of the statute will reopen the door to the fraud of secret liens. Conceding this to be true, it was evidently the view of the Legislature that it was necessary, in order to guard against other evils. It is not the province of the court to pass upon the wisdom or expediency of the amendment, but only to construe it as it is written.

Somewhat analogous in principle to the subject under discussion was the issue in the case of Martin, Trustee in Bankruptcy of Virgin, v. Commercial National Bank of Macon, Ga., 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441, and also in the case of Carey v. Donohue, Trustee in Bankruptcy of Humphreys, 240 U. S. 430, 36 S. Ct. 386, 60 L. Ed. 726, L. R. A. 1917A, 295. The latter case reviews the recordation laws of the state of Ohio in conjunction with the provisions of section 60 of the Bankruptcy Act (Comp. St. § 9644). The former case contains a review of the recordation laws of the state of Georgia, along with the provisions of sections 47 and 60 of the Bankruptcy Act (Comp. St. §§ 9631, 9644), and their correlated effect, the one upon the other. See, also, Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275. It would unnecessarily extend the length of this opinion to review these cases. It is sufficient to say that they are in harmony with the general conclusions above reached.

[6] The Farmers' & Mechanics' Bank of Florence bases its claim of preference upon a confession of judgment entered in its behalf in the court of common pleas for Florence county, S. C., on May 28, 1921. This confession of judgment was signed in the ·name of the Syleecau Manufacturing Company, by J. C. Cauthen, its president and treasurer, and attested by M. B. Barker, its secretary, under its corporate seal. This confession of judgment is assailed by the other creditors upon three grounds: (1) Because the judgment was rendered in a county other than the one wherein the Sylee-

cau Manufacturing Company was domiciled; (2) because the president of the corporation had no authority, express or implied, to enter this confession; (3) because there has been no subsequent ratification of the president's act.

Subsequent to the filing of the referee's report, the trustee for the bankrupt made a motion upon due notice before his honor, S. W. G. Shipp, judge of the Twelfth judicial circuit of South Carolina, which circuit embraces Florence county, to vacate said judgment upon two grounds, as follows:

"(1) That the confession of judgment is void, for the reason that Syleecau Manufacturing Company was not at the time, nor at any time, a resident of Florence county, said state, but Syleecau Manufacturing Company was then and is now a domestic corporation, having its domicile and residence at Rock Hill, in York county, said state.

"(2) That J. C. Cauthen did not have authority to confess the said judgment, not having been authorized to do so by any direction or authorization of the board of directors of the Syleecau Manufacturing Company."

By a consent order, dated August 18, 1922, the cause was recommitted to the referee to take the testimony as to the said state court proceeding, and to report back to this court with all convenient speed the testimony so taken, together with his conclusions of the law and fact. A further reference was held, and on September 11, 1922, the referee submitted his further report, embracing a certified copy of Judge Shipp's order and decision upon said motion. By this order both grounds of the motion were sustained and the confession of judgment was vacated and set aside. The referee's report concluded as follows: "My conclusion is, therefore, that the judgment of the Farmers' & Mechanics' Bank against Syleecau Manufacturing Company has been dissolved by appropriate proceeding by a court of competent jurisdiction, and is therefore no lien upon the property of the bankrupt."

Accompanying the report of the referee was a letter of the attorney for the Farmers' & Mechanics' Bank and copy of a record, entitled "Case containing Exceptions," which might indicate that an appeal had been taken from Judge Shipp's order. Those papers, however, do not appear to have been formally or properly introduced in evidence, nor, if so introduced, to have been sufficiently proved. In other words, there is no evidence whatever that an appeal was actually taken.

Even if I should hold that the case is now under appeal, I would still be constrained to hold that the bank is now without a lien or preference. Its judgment was rendered in a state court, and has been vacated and set aside in a direct proceeding by a court of competent jurisdiction thereof. The claim is through the authority of a judge of the state court, and this same authority has declared the claim to be void. Unless and until this judgment is reversed by the Supreme Court, it must stand as the law of the case. [7] Even if I felt at liberty to ignore the authority of Judge Shipp's order, I would be impelled to hold that the confession of judgment was void under the rules of law established by the Supreme Court of South Carolina as laid down in Re Ware Furniture Co., 49 S. C. 20, 27 S. E. 9; Southern Co. v. Thew, 5 S. C. 5. It was stated above that the bank's claim of lien, in any event, must be postponed to that of the Manchester Company, because of actual notice. It is contended, however, that this position is not well founded, for the reason that the bank's notice was of the existence of a chattel mortgage. The evidence is to the effect that the bank was notified that the Manchester Company had a previous mortgage upon the Syleecau Company's timber rights. With this actual notice, it was immaterial to the bank whether the mortgage was either unrecorded or improperly recorded. I must hold that, even if the bank's judgment were valid, its lien would have to be postponed to that of the Manchester Company.

A decree will be entered, modifying the report of the referee as above outlined, and confirming it in all other respects, and judgment entered accordingly.