**In re MYERS et al.**

**Ex parte DISTIN.**

Circuit Court of Appeals, Second Circuit.
February 6, 1928.

No. 102.

1. **Chattel mortgages ⬦186—Statute making chattel mortgage without change of possession prima facie fraudulent merely declared common law (2 Rev. St. N. Y. pt. 2, c. 7, tit. 2, § 5).**

2 Rev. St. N. Y. pt. 2, c. 7, tit. 2, § 5, under which chattel mortgage without change of possession was prima facie fraudulent, was no more than a declaration of the common law.

2. **Chattel mortgages ⬦192—Rights of chattel mortgagee, filing mortgage too late, are governed by existing statute, whether or not repeal of earlier statute revived common-law rule (Lien Law N. Y. § 230; 2 Rev. St. N. Y. pt. 2, c. 7, tit. 2, § 5; Personal Property Law N. Y. [Laws 1897, c. 417, § 40, and Consol. Laws, Revision 1909, c. 41, § 80]).**

Lien Law N. Y. (Consol. Laws, c. 33) § 230, must be taken as complete measure of rights of chattel mortgagee, not filing mortgage in season, whether or not repeal of 2 Rev. St. N. Y. pt. 2, c. 7, tit. 2, § 5, declaring mortgage without change of possession prima facie fraudulent, by Personal Property Law N. Y. (Laws 1897, c. 417) § 40, and Consol. Laws (Revision 1909, c. 41, § 80), revived such common-law rule.

3. **Chattel mortgages ⬦192—Chattel mortgage, filed too late because of neglect, is valid as to subsequent creditors (Lien Law N. Y. § 230).**

Chattel mortgage, not filed of record within time required by Lien Law N. Y. (Consol. Laws, c. 33) § 230, merely because of mortgagee's neglect, not by agreement of parties, is valid, except as to creditors whose claims antedated its filing.

4. **Chattel mortgages ⬦192—Lien of chattel mortgage given to secure collateral indorsement of note extends only to amount paid in taking up note, with interest, as to which it has priority over creditors subsequent to filing, and prorates with prior creditors (Lien Law N. Y. § 230).**

One taking chattel mortgage as security for indorsement of note could claim priority over creditors becoming such since its filing, under Lien Law N. Y. (Consol. Laws, c. 33) § 230, only to extent of amount paid in taking up note, with interest, and must share such amount ratably with prior creditors; lien being limited to mortgagee's advances.

5. **Bankruptcy ⬦474—Mortgagee's share of lien against bankrupt's personalty is chargeable only with ratable proportion of expenses of sale and so much else as helped to preserve property or proceeds (amendment of 1910 to Bankruptcy Act, § 48d [11 USCA § 76).**

Mortgagee's share of lien on bankrupts' personalty is not chargeable with general expenses of administration of estate, but only with ratable proportion of expenses of sale and so much else as actually helped to preserve property or its proceeds, notwithstanding amendment of 1910 to Bankruptcy Act, § 48d (11 USCA § 76).

Appeal from the District Court of the United States for the Northern District of New York.

In the matter of the bankruptcy of Reuben L. Myers and another. From an order sustaining a claim of John W. Distin in part (19 F.[2d] 600), James R. Somers, trustee, appeals. Modified, and affirmed, as modified.

Appeal by a trustee in bankruptcy from an order of the District Court for the Northern District of New York, holding valid the appellee's chattel mortgage as against those creditors who became such after it was filed.

On April 6, 1925, the bankrupts executed and delivered to the appellee, Distin, a chattel mortgage on their fixtures and appliances in Fulton, N. Y., as security for his indorsement of their note. Distin did not take possession of the goods, and neglected to file the mortgage until July 21, 1925, though not because of any agreement with the bankrupts. On March 26, 1926, the bankrupts filed a voluntary petition and were adjudicated; the appellant is their trustee. By agreement the chattels were sold for more than the amount of Distin's claim, and the proceeds held to await the decision of the court.

Distin, having taken up the note, filed his proof of claim, and demanded that it should be paid out of the proceeds. The trustee objected, and the referee sustained him. On petition to the District Judge, the referee's order was reversed, and Distin's claim sustained as against subsequent creditors, but denied as to all those who had become such before the mortgage was filed. The whole proceeds of the sale were divided between Distin and such earlier creditors in the proportion of their claims.

The trustee alone appeals.

A. T. Jennings, of Fulton, N. Y., for appellant.

William S. Hillick, of Fulton, N. Y., for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1, 2] The question is altogether of the New York chattel mortgage act (section 230 of the Lien Law [Consol. Laws, c. 33]), and has apparently never been determined by the New York courts. Distin agrees that his neglect to file the mortgage for 3½ months subjected it to the claims of

those who became creditors, not only between execution and filing, but also before execution. Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073. The trustee's position is that, under 2 R. S. pt. 2, c. 7, tit. 2, § 5, the mortgage was prima facie fraudulent, because of the mortgagor's retention of possession, and that, unless it was filed in season, section 230 of the Lien Law never came into effect at all. It is quite true that it was held in Karst v. Gane that sections 5 and 6 of title 2 were not repealed by the act of 1833 (Laws 1833, c. 279), the precursor of section 230 of the Lien Law. However, the whole of the title was repealed by section 40 of the Personal Property Law of 1897 (Laws 1897, c. 417), and again by section 80 of the Revision of 1909 (Consol. Laws. c. 41). The common-law doctrine perhaps remains, and the statute was no more than a declaration of the common law. Barrow v. Paxton, 5 Johns. (N. Y.) 258, 4 Am. Dec. 354; Bissell v. Hopkins, 3 Cow. (N. Y.) 166, 15 Am. Dec. 259; Hall v. Tuttle, 8 Wend. (N. Y.) 375; Sturtevant v. Bollard, 9 Johns. (N. Y.) 337, 6 Am. Dec. 281. But if the law of 1833, and later section 230 of the Lien Law, made filing an equivalent of the change of possession required by 2 R. S. pt. 2, c. 7, tit. 2, § 5, it is of no importance whether the repeal of that section revived the common law or not. In any case, section 230 is to be taken as the complete measure of the mortgagee's rights.

[3] There is no inherent reason why the mortgage should not be valid as against subsequent creditors, even though the mortgagee was slack in filing it. We have not to do with a delay agreed to by the parties, which has at times been urged to vitiate the mortgage as a fraud upon creditors generally. Here the mortgagee has merely been guilty of neglect, whose consequences to him should be measured by its result upon others. Plainly his delay could have had no possible effect upon the action of those who became creditors after it had ended. We should have to hold that his failure in some way infected the mortgage forever, a gratuitous assumption, which would result in hardship to him without benefit to any one else.

So far as we can discover, the courts of New York take no such view. In Skilton v. Codington, 86 App. Div. 166, 83 N. Y. S. 351, it was said that subsequent creditors were not protected, and the declaration was scarcely a dictum. That decision was, however, reversed in Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885, and, although the same rule was repeated on page 8ß, this time, it must be owned, it was merely

in passing. In Volker Lumber Co. v. Utah, etc., Co., 45 Utah, 603, 148 P. 365, Ann. Cas. 1917D, 1158; Carroll v. Anderson, 30 Wyo. 217, 218 P. 1038, and Maverick v. Bohemian Club (Tex. Civ. App.) 36 S. W. 147, the point was apparently ruled in the mortgagee's favor, but whether the doctrine obtains in those states that delay in filing invalidates the mortgage as to prior creditors does not appear. The same is true of Jones v. Bank of Exchange, 201 Mo. App. 545, 213 S. W. 892. Where the test is whether the creditor has obtained a lien before filing, the point cannot arise, and for this reason In re Shirley, 112 F. 301 (C. C. A. 6), is distinguishable. In such jurisdictions, lienors subsequent to filing, of course, must yield. On the whole, it is doubtful whether there can be said to be any authority on the question; but it is equally clear that the view we take is not foreclosed.

We are urged to regard our own decisions in Re Watts-Woodward Press, Inc., 181 F. 71, in Re Schmidt, 181 F. 73, and in Re Leslie-Judge Co., 272 F. 886, as contrary. In the first, the only question up was of those who had become creditors before execution, and our language referred only to them, as appears by our reliance upon Karst v. Gane. Indeed, there could scarcely have been any creditors after filing, for an assignment for the benefit of creditors followed almost at once. In re Watts-Woodward Press, Inc., and In re Leslie-Judge Co. each concerned mortgages originally valid but not refiled as required. While it might indeed have been held that refiling was analogous to filing, the original form of the relevant section had provided that upon failure to refile the mortgage should "cease to be valid," which the New York courts had construed drastically. Porter v. Parmley, 52 N. Y. 185; Marsden v. Cornell, 62 N. Y. 215.

The section, as amended when our decisions were rendered (section 90 of the Lien Law of 1897 [Laws 1897, c. 418]), was, it is true, in the same terms as section 230; but we ignored the change and followed the earlier decisions. Moreover, in neither case did it certainly appear that any of the creditors' claims arose after the refiling, and in Re Leslie-Judge Co. the mortgage did not cover the property at all. The effect upon subsequent creditors of a failure to refile is not inevitably the same as of a delay in original filing. A person proposing to deal with the mortgagor might be satisfied by searching for 1 year and 30 days after the original filing, if he found nothing. His omission to go further would be excusable, and should not charge him with

notice of a refiling after the prescribed period. These considerations do not apply to the original filing. In the absence of some authoritative ruling of the New York courts, we are satisfied that the decision below was right, and that the mortgage was valid, except as to creditors whose claims antedate its filing.

[4] The order was, however, erroneous in one respect: It allowed the mortgagee and the earlier creditors to share in the whole proceeds of the property covered. The lien was limited to the mortgagee's advances, and for the balance—i. e., the equity—the property was general assets of the estate. The mortgagee could therefore claim priority only to the extent of the amount paid in taking up the note with interest, and this he must share ratably with prior creditors.

[5] Finally, the mortgagee's share of the lien is not chargeable with the general expenses of administration of the estate, but only with a ratable proportion of the expenses of sale and of so much else as actually helped to preserve the property or its proceeds. In re Williams' Estate, 156 F. 934 (C. C. A. 9); Seaboard Nat. Bank v. Rogers Milk Products Co., 21 F.(2d) 414, 417 (C. C. A. 2); Ætna Life Ins. Co. v. Leonard, 186 F. 148 (C. C. A. 5). The amendment of 1910 to section 48d of the Bankruptcy Act (11 USCA § 76) did not affect this rule. Gugel v. New Orleans Nat. Bank, 239 F. 676 (C. C. A. 5); Virginia Securities Corp. v. Patrick Orchards, 20 F.(2d) 78 (C. C. A. 4).

The mortgagee raises no question as to the propriety of the division of the lien between himself and the earlier creditors.

Order modified, and, as modified, affirmed.