**In re the POOL PLACE, INC., Debtor.**

**Bankruptcy No. 83–00154.**

United States Bankruptcy Court,
D. Hawaii.

Dec. 30, 1985.

Gerald Fujita, Honolulu, Hawaii, for debtor.

Stanley M. Morishige, Gary Shigemura, Louis L.C. Chang, U.S. Atty., Honolulu, Hawaii, for respondents.

## ORDER RE: APPLICATION TO DISBURSE PROCEEDS

JON J. CHINEN, Bankruptcy Judge.

On July 12, 1984, The Pool Place, Inc. ("Debtor") filed an Application to Disburse Proceeds of Contract No. 1571, County of Kauai, to Secured Creditors and Bond claimants ("Application"). A hearing on the Application was held on October 25, 1984 at which time the matter was taken under advisement. On February 20, 1985, the Court issued a Notice to Creditors requiring creditors to file affidavits and timesheets in support of their claims and informing creditors that a continued hearing to determine the priority of claimants will

be held on March 13, 1985. Subsequently, the hearing was rescheduled and held on April 22, 1985. Having reviewed the files, the affidavits and documents filed in this case, the Court renders the following findings of fact and conclusions of law and order.

The Debtor is engaged in the business of installation and repairing swimming pools. The Debtor had negotiated with the County of Kauai for the installation of a new filter and chlorination system for the County's Kapaa swimming pool. On March 23, 1983, Contract No. 1571 between the Debtor and the County of Kauai became effective. Shortly thereafter, on March 29, 1983, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Prior to as well as after the Debtor's filing of bankruptcy, the Debtor negotiated with certain materialmen and subcontractors for services and materials which were necessary to complete the installation of the swimming pool. The services and materials were provided after the filing of the Debtor's bankruptcy petition. After Debtor had completed the project, the county of Kauai disbursed $27,300.00 to the Debtor's attorney who is holding the funds in a client trust account. After payment of priority taxes, there remains $24,726.82 as of October 26, 1984.

There are competing claims to the proceeds of the contract with the County of Kauai. First, the subcontractors and materialmen request payment from the proceeds.

Second, the United States Small Business Administration ("SBA") claims that the entire proceeds are cash collateral which are subject to its security interest. In particular, SBA contends that, on November 3, 1978, the debtor executed a promissory note in the amount of $90,000.00 and a security agreement in favor of the Bank of Hawaii. A financing statement, which covers the debtor's equipment, inventory, accounts, contract rights and general intangibles then existing or thereafter arising, was filed in the Bureau of Conveyances of the State of Hawaii ("Bureau") on August 28, 1978. And, on April 20, 1983, a Financing Statement Change was filed in the Bureau noting that the Bank of Hawaii has assigned its rights under the Financing Statement to the SBA. The SBA claims that the Debtor owes $49,549.05 together with interest as of July 26, 1984 in the amount of $9,217.85.

Third, City Bank also claims that it is entitled to the entire proceeds. The affidavit of Richard S. Ohama, the Vice-President of City Bank, states that Chris Young, the President of the Debtor, represented that the funds were needed to obtain materials and labor for the October 8, 1982 contract with the County of Kauai. On December 8, 1982, City Bank loaned the Debtor $15,-000.00. As additional security, City Bank took from the Debtor an Assignment of Money Due under the Contract with the County of Kauai. Both the County of Kauai and the bonding agent approved and accepted the assignment to City bank.

Ohama's affidavit further provides that prior to May 3, 1983, the Debtor applied to City Bank for the refinancing of the original $15,000.00 loan and for a new advance of $5,000.00. Young represented that the contract was not complete and that the new advance was necessary to pay suppliers and laborers in order to complete the job. City Bank approved the request for refinancing and the Debtor executed a new promissory note in the amount of $20,-000.00 on May 3, 1983. Ohama's Affidavit provides that the Debtor did not inform City Bank that it had filed a petition in bankruptcy.

Fourth, Chris Young, the President and sole employee of the Debtor, requests $10,-000.00 in back wages, which represent $750.00 a month for one year.

Finally, the law firm of Shigemura & Ching requests attorneys fees in the amount of $4,100.00 and costs of $20.00.

The proceeds of the contract with the County of Kauai is covered by the SBA's security interest, which was perfected in 1978. The Debtor's assignment of the contract proceeds on December 7, 1982 to City Bank is, therefore, subordinate to the

SBA's interest in the contract proceeds. The Court notes that the SBA did not approve the assignment.

▮ Based on the foregoing, the court finds that the SBA's claim of $49,549.05 is ahead of the claim of City Bank and those of the subcontractors and materialmen.

The contract proceeds are the cash collateral of the SBA and the Debtor has not provided any method of providing adequate protection of the cash collateral. In fact, the Debtor proposes to distribute SBA's cash collateral to others without providing adequate protection to the SBA.

The Debtor claims that there is $24,726.82 of contract proceeds remaining in the trust account. It is evident that this amount is insufficient to pay the claims of the SBA and that of City Bank. Since the SBA's interest was perfected prior to that of City Bank, the Court orders the distribution of the contract proceeds to the SBA subject to the following payments.

It is important to note that 11 U.S.C. § 506(c) provides that the trustee may recover from property securing an allowed secured claim the reasonable and necessary costs and expenses of preserving or disposing of such property to the extent of any benefit to the holder of such claim. It is evident that without the supplies and labor provided by the subcontractors and materialmen, there would be no proceeds to distribute.

In *In Re Sonama V*, 24 B.R. 600, 8 C.B.C.2d 1032 (9th Cir.B.A.P.) 1982, the Court stated:

The cases indicate that the secured creditor may be charged for acts which directly protect or preserve the collateral in a specific and limited sense.

And, in *In re Myers, et. al.*, 24 F.2d 349 (2nd Cir.1982). The Appellate Court held:

Finally, the mortgagee's share of the lien is not chargeable with the general expenses of administration of the estate, but only with a ratable proportion of the expenses of sale and if so much else as actually helped to preserve the property on its proceeds.

See also *In Re Korupp Associates, Inc.*, 30 B.R. 659, 8 C.B.C.2d 877 (Bkrtcy 1983).

▮ These subcontractors and materialmen benefitted the SBA by preserving the contract with the County of Kauai and by enabling the Debtor to complete the contract and to receive the proceeds. The court, therefore, rules that the trustee, or the debtor in possession in this case, may recover from the proceeds the amounts claimed by the subcontractors and materialmen. The subcontractors and materialmen shall file an affidavit verifying the above-mentioned amounts which are claimed within one month from the date of this Memorandum Decision and Order. The Debtor's attorney is directed thereafter to pay the subcontractors and materialmen, who have verified the amounts by filing affidavits.

▮ The Court further rules that Chris Young is not entitled to any of the proceeds of the contract with the County of Kauai. In particular, the Court notes that Young, when he applied for refinancing on behalf of the Debtor, failed to inform City Bank of the Debtor's filing of bankruptcy. Furthermore, the Court questions Young's use of the fund which were obtained from City Bank for the purpose of completing the project and paying the subcontractors and materialmen. It is evident that Young failed to pay the subcontractors and materialmen with the funds. Based on the foregoing, the Court finds that Young's actions did not benefit the secured creditor and that it would be inequitable to allow Young to receive payment from the proceeds.

▮ The Court also disallows payment of the Debtor's attorney's fees and costs from the contract proceeds except for $500.00 in attorney's fees which this Court finds is a fair and equitable amount for the time spent in bringing this motion for distribution. The attorneys' time-sheets indicate that the attorneys are charging for time spent in filing the petition and for other matters which are not directly related to the motion for distribution.

The Court rules that it would be unfair to charge these amounts requested by Debtor's attorney to the secured creditor since such services did not benefit the secured creditor. Although the attorneys may not recover fees for such services from the contract proceeds, the attorneys may apply for compensation from the funds remaining in the Debtor's estate after the contract proceeds are distributed.

After the subcontractors and materialmen are paid, the Debtor's attorney is directed forthwith to pay to SBA the remaining amounts from the contract proceeds.